UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHAWN GRANBERRY,<br><br>          Plaintiff,<br><br>   v.<br><br>JET BLUE AIRWAYS,<br><br>          Defendant.<br>_____/ | No. C-04-0845 JSW (EMC)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION TO COMPEL**<br>**(Docket No. 22)** |

        Plaintiff Shawn Granberry seeks to compel Defendant Jet Blue Airways to produce documents related to its safety record, Damage Equipment Reports, Station Incident Reports, and a safety incident involving another Jet Blue employee. Having considered the parties' joint letter, briefs, and accompanying submissions, as well as the oral argument of counsel, the Court hereby GRANTS in part and DENIES in part Mr. Granberry's motion to compel.

## I. DISCUSSION

        Mr. Granberry was a station supervisor for Jet Blue. He asserts that he was discharged because of his race -- and not because of his failure to report equipment damage and incidents to his supervisor, as Jet Blue contends. This motion to compel concerns four document requests served by Mr. Granberry on Jet Blue. The requests ask Jet Blue to produce: (1) documents reflecting Jet Blue's safety record, from January 1, 2001, to December 31, 2003; (2) documents reflecting Jet Blue's damaged equipment, including Damaged Equipment Reports, from January 1, 2001, to December 31, 2003; (3) documents reflecting damage or injuries at Jet Blue's Oakland Airport facility, including station incident reports, from January 1, 2001, to December 31, 2003; and (4)

1  documents reflecting an incident involving another Jet Blue employee, Patrick Trainer, pushing a Jet
2  Blue airplane into a Southwest Airlines plane.

3  A.     Relevance

4  As a preliminary matter, the Court must address whether the documents requested by Mr.
5  Granberry are relevant.

6  According to Mr. Granberry, he was initially told that he was being terminated because of his
7  failure to file written reports with his supervisor -- more specifically, a damaged equipment report
8  regarding a tug with a broken window and a station incident report regarding a disconnected hose in
9  an airstart unit and a jackknifed luggage cart that hit another piece of equipment.  It was only later
10 that Jet Blue changed its story (again, according to Mr. Granberry) and claimed that the basis for his
11 termination was his failure to orally notify his supervisor of these incidents.  If Mr. Granberry's
12 testimony is believed, the fact that the initially stated reason was in fact groundless and was then
13 changed by Jet Blue would tend to show that his termination was pretextual.  For example, even if
14 Jet Blue has a formal policy requiring written reports by the station supervisor on *any* accident, if it
15 is shown that, as a matter of practice, written reports were filed only on *major* accidents or were
16 routinely written by others and not the station supervisor, then Mr. Granberry's termination, at least
17 on the grounds initially represented, were baseless and pretextual of intentional discrimination.
18 Thus, whether the initially stated reason was valid is relevant to his claim.

19 Based on the above, the Court concludes that Mr. Granberry has met the liberal standard of
20 relevance for purposes of discovery under Federal Rule of Civil Procedure 26(b)(1) -- at least to the
21 extent he seeks from Jet Blue (1) damaged equipment reports and (2) station incident reports --
22 reports for which he claimed he was terminated for failure to file.  *See ICU Med., Inc. v. B.Braun*
23 *Med., Inc.*, 224 F.R.D. 461, 462 (N.D. Cal. 2002) (noting that there is a "liberal standard of
24 relevancy" under Federal Rule of Civil Procedure 26).  However, Mr. Granberry has not
25 demonstrated relevance with respect to the broader category of documents, such as all documents
26 reflecting Jet Blue's safety record, other than these two categories.

27 Jet Blue argues that even the damaged equipment reports and station incident reports are not
28 relevant because the reason for Mr. Granberry's termination had nothing to do with his failure to

2

provide a *written* report. *See* Turai Decl., Ex. C (responses to interrogatories, stating, *inter alia*, that "Defendant does not contend Plaintiff's termination was due to a failure to prepare a written incident report or other written document(s) relating to any incident"). Rather, according to Jet Blue, Mr. Granberry was terminated because he did not notify his supervisor, as instructed only days earlier, about the incidents described above. The problem for Jet Blue is that, in spite of what it claims, Mr. Granberry has testified that he was initially told he was being terminated for his failure to provide written reports. Given this evidence, the reports may be probative to Jet Blue's motive and state of mind. The fact that their relevance is conditional -- requiring the finder of fact to believe Mr. Granberry rather than Jet Blue -- does not render the documents irrelevant for purposes of discovery.

That being said, the Court takes note that production of the damaged equipment reports and station incident reports may be unduly burdensome on Jet Blue in light of the fact that their relevance is indirect and limited. At the hearing on the motion to compel, Jet Blue represented that, based on the document requests served by Mr. Granberry (which cover more than just these two kinds of reports), it would have to produce more than 1,700 documents. Accordingly, consistent with Federal Rule of Civil Procedure 26(b)(2), the Court orders the parties to further meet and confer to determine (1) how many documents are at issue now that relevance has been limited to damaged equipment reports and station incident reports, (2) whether there is an undue burden on Jet Blue to produce those documents, and (3) if so, whether the parties can agree on a narrowed request for damaged equipment reports and station incident reports. The Court emphasizes that at least some, if not all, of the damaged equipment reports and station incident reports requested by Mr. Granberry must be produced because, as discussed below, these reports are not protected by any self-critical analysis privilege.[1]

---

[1] The Court does not at this time make any ruling as to whether documents related to an incident involving another Jet Blue employee, Patrick Trainer, pushing a Jet Blue airplane into a Southwest airplane should be produced. To the extent that there is a damaged equipment report or station incident report on the incident, then the parties should discuss whether the document(s) should be produced during their meet and confer.

3

B.      Self-Critical Analysis Privilege

Jet Blue argues that it should not have to produce any of the documents responsive to the document requests at issue because they are protected by the self-critical analysis privilege. Because the Court has determined that only the damaged equipment reports and station incident reports are relevant, the Court need only consider whether the privilege protects these documents. The burden is on Jet Blue, as the proponent of the privilege, to establish that the privilege applies. *See Dowling v. American Haw. Cruises, Inc.*, 971 F.2d 423, 425-26 (9th Cir. 1992) (stating that courts recognizing the privilege "have generally required that the party asserting the privilege demonstrate that the material to be protected satisfies at least [four] criteria"); *see also King v. Conde*, 121 F.R.D. 180, 189 (E.D.N.Y. 1988) ("The party seeking to invoke the privilege bears the burden of justifying its application.").

As a preliminary matter, the Court notes that, even though this case involves both federal and state claims, the federal law of privilege should apply. *See Reichhold Chems., Inc. v. Textron, Inc.*, 157 F.R.D. 522, 528 (N.D. Fla. 1994) (stating that, in federal question case with pendent state law claims, federal law of privileges governs entire case); *Perrignon v. Bergen Brunswig Corp.*, 77 F.R.D. 455, 458 (N.D. Cal. 1978) (stating that "in federal question cases where pendent state claims are raised the federal common law of privileges should govern all claims of privilege raised in the litigation"); *see also* 6-26 Moore's Fed. Prac. -- Civ. § 26.47[4] ("[I]n federal question cases . . . in which state law claims are also raised . . . , any asserted privileges relating to evidence relevant to both state and federal claims are governed by federal common law.").

As a matter of federal law -- more specifically, as a matter of Ninth Circuit law -- it is unlikely that the self-critical analysis privilege exists. The Ninth Circuit has not recognized this privilege. *See Union Pac. R.R. v. Mower*, 219 F.3d 1069, 1076 n.7 (9th Cir. 2000) ("UP's assertion of a self-critical analysis privilege is particularly questionable. This court has not recognized this novel privilege."); *see also Dowling*, 971 F.2d at 426 n.1 (noting that neither the Supreme Court nor any circuit court had "definitively denied the existence of such a privilege, nor accepted it and defined its scope," but "[r]ather, when confronted with a claim of the privilege, they have refused on narrow grounds to apply it to the facts before them"); *Morgan v. Union Pacific R.R. Co.*, 182 F.R.D.

4

261, 264 (N.D. Ill. 1998) (stating that it is unclear whether federal self-critical analysis privilege exists; many courts that have applied privilege have done so only preceded by caveat "even if privilege exists").

Moreover, the non-existence of the privilege is particularly evident in cases involving an employment discrimination claim under Title VII, which Mr. Granberry has pled in the instant case. While "'[a] fair number' of district courts have recognized the privilege in [the] context [of employment discrimination], . . . an equal or greater number 'have either categorically denied the existence of a "self-critical analysis" privilege or have rejected its application as to particular documents.'" *Johnson v. United Parcel Serv., Inc.*, 206 F.R.D. 686, 689 (M.D. Fla. 2002). Furthermore, "no circuit court of appeals has explicitly recognized the self-critical analysis privilege." *Id.* at 689-90. Most important, the validity of the self-critical analysis privilege is highly doubtful in light of the Supreme Court's decision *University of Pennsylvania v. EEOC*, 493 U.S. 182 (1990), which declined to recognize a common law privilege against disclosure of confidential peer review materials. "While the [Supreme] Court did not explicitly discuss the self-critical analysis privilege *per se* in *University of Pennsylvania*, it appears that the Court implicitly rejected the privilege in the context of Title VII employment discrimination claims." *Johnson*, 206 F.R.D. at 691. The Court's analysis rejecting application of a peer review privilege or academic freedom compels the same result here. Moreover, the fact that common law privileges are to be "strictly construed," *University of Penn.*, 493 U.S. at 189, and the fact that there is no "historical or statistical basis" for the privilege, *see id.* at 195, further substantiate the conclusion that the privilege does not apply to employment discrimination litigation.[2]

---

[2] Jet Blue's attempt to analyze the privilege to Federal Rule of Evidence 407 limiting the admissibility of subsequent remedial measures is inapt. Rule 407 governs admissibility. It does not preclude discovery. *See Stalling v. Union Pac. R.R. Co.*, No. 01 C 1056, 2003 U.S. Dist. LEXIS 9550, at *29-30 (N.D. Ill. June 6, 2003) ("Federal Rule of Evidence 407, which bars the admissibility of subsequent remedial measures to prove negligence or culpable conduct in connection with the event, is not a rule governing pretrial discovery. Rule 407 does not preclude Stalling's requested discovery because it may be relevant and admissible under an exception to Rule 407 depending on what Defendants argue at trial."); *see also* 2-407 Weinstein's Fed. Evid. § 407.09 ("Rule 407 is a rule of admissibility at trial; it is not a rule governing pretrial procedure. The standard of admissibility established by Rule 407 for evidence of subsequent remedial measures is more stringent than that for permitting pretrial discovery. The rules of evidence are relaxed in discovery proceedings because inadmissible material often leads to the discovery of admissible evidence.").

Jet Blue argues that the instant case -- although an employment discrimination case under Title VII -- should be considered instead a "hybrid" case because at issue are safety-related documents and not the kinds of documents typically at issue in other employment discrimination cases, "which tend to concern employment issues such as statistical analyses about employees (age, race, gender, religion), affirmative action compliance reports, and EEOC related studies." *Tice v. Am. Airlines, Inc.*, 192 F.R.D. 270, 273 (N.D. Ill. 2000). The Court disagrees that this changes the outcome because assertion of the privilege to deny access in discovery to relevant documents would impair the enforcement of Title VII, a concern that informed the Court's decision in *University of Pennsylvania*. *See University of Penn.*, 493 U.S. at 194 (noting that "peer review" privilege would place a "substantial litigation-producing obstacle" in enforcement of Title VII). Indeed, it is not uncommon in a disparate treatment case to permit discovery not only into statistical analysis and compliance reports but also into documents describing circumstances under which similarly situated employees are treated, be it personnel performance files or other documents which pertain to the daily operation of the workplace. Discovery is not limited to equal employment statistics or reports.

Even if the Court were to assume that the self-critical privilege exists for "hybrid" cases, Jet Blue has failed to establish all the requisite elements of the privilege.

First, Jet Blue has not offered any evidence showing that the damaged equipment reports and station incident reports "result[ed] from a critical self-analysis undertaken by [the airline]," a central requirement for the privilege to apply. *Dowling*, 971 F.2d at 426. It may be that the reports are collected "for the *purpose* of monitoring and improving safety within the airline," Opp'n at 7 (emphasis added), but Jet Blue has made no demonstration that the reports contain subject impressions and opinions instead of just objective facts. *See Reichhold Chems., Inc. v. Textron, Inc.*, 157 F.R.D. 522, 524 (N.D. Fla. 1994); *Tice*, 192 F.R.D. at 272. *See, e.g.*, *Morgan*, 182 F.R.D. at 266 (stating that, even if privilege did apply, defendant would still have to disclose factual information in reports, including facts related to cause or circumstances of accident); *Johnson*, 206 F.R.D. at 693 (stating that, even if privilege did apply to employment discrimination cases, surveys and employee comments would not be protected because they did not disclose self-criticism by defendant or views of management but rather were simply anecdotal statements by employees).

6

1  Indeed, it appears that all that the damaged equipment reports and station incident reports do are
2  *report* on accidents or safety-related concerns, in which case they are objective in nature.  *See* Cole
3  Decl., Exs. 2-4 (excerpts from Jet Blue's Office of Safety Manual, indicating that ramp irregularity
4  reports, station/customer incident reports, and safety concern reports are used to report accidents
5  and/or safety-related concerns).

6  Second, it is unlikely that Jet Blue would curtail the damaged equipment reports and station
7  incident reports if it knew that the reports would be subject to discovery.  *See Dowling*, 971 F.3d at
8  426 (noting that, for the self-critical analysis privilege to apply, "the information must be of the type
9  whose flow would be curtailed if discovery were allowed").  As suggested by the court in *Tice*, Jet
10 Blue would not stop reporting requirements on damaged equipment and station incidents because
11 such would be "bad business."  *Tice*, 192 F.R.D. at 273 n.5.  It would be perverse to assume that Jet
12 Blue would make a conscious corporate decision to stop writing damage and incident reports
13 designed to monitor and enhance its safety record simply to avoid the potential use of the reports "as
14 a weapon in hypothetical litigation they are supposed to prevent."  *Dowling*, 971 F.2d at 427.

15 Finally, Jet Blue has not established that the damaged equipment reports and station incident
16 reports were prepared with the expectation that they would be kept confidential, and have in fact
17 been kept confidential, another requirement of the privilege.  *See Dowling*, 971 F.2d at 426.  For
18 example, Jet Blue's Office of Safety Manual specifically states that ramp irregularity reports are
19 "not confidential."  Cole Decl., Ex. 2.  Jet Blue suggests that there is limited distribution of the
20 damaged equipment reports and station incident reports because the Office of Safety Manual
21 provides that ramp irregularity reports, station/customer incident reports, and safety concern reports
22 are given to specific persons or departments in Jet Blue.  However, simply because the reports are
23 admittedly given to specific persons or departments within the airline does not mean that distribution
24 is restricted to these persons or groups; nor does it mean that the reports are not given to persons or
25 entities outside of the airline.  Notably absent from the Office of Safety Manual is any pledge by Jet
26 Blue that the reports *are* confidential and will not be shared outside of the airline.

## II. CONCLUSION

For the foregoing reasons, the Court grants in part and denies in part Mr. Granberry's motion to compel. The parties are ordered to meet and confer within the next five (5) days in conformance with this order.

This order disposes of Docket No. 22.

IT IS SO ORDERED.

Dated: May 31, 2005

EDWARD M. CHEN
United States Magistrate Judge